1          IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TEXAS
2              MIDLAND-ODESSA DIVISION

3
UNITED STATES OF AMERICA,        ) Case No. 7:19-CR-265
4                                )
      Plaintiff,                 ) COA No. 20-50480
5                                )
    vs.                          ) Midland, Texas
6                                )
JESSE RAY HARDEE,                )
7                                ) June 10, 2020
      Defendant.                 )
8 _____) 10:34 a.m.

9
                **TRANSCRIPT OF SENTENCING**
10        **BEFORE THE HONORABLE DAVID COUNTS**
             **UNITED STATES DISTRICT JUDGE**
11

12 **APPEARANCES:**

13 **FOR THE GOVERNMENT:**
        MR. JAMES GLENN HARWOOD, AUSA
14      Office of the United States Attorney
        Midland-Odessa Division
15      400 W. Illinois, Suite 1200
        Midland, Texas  79701
16

17 **FOR THE DEFENDANT:**
        MR. DAVID G. ROGERS
18      Fivecoat & Rogers, PLLC
        214 W. Texas Avenue, Suite 811
19      Midland, Texas  79701

20
**COURT REPORTER:**
21      MS. ANN M. RECORD, RMR, CRR, CMRS, CRI
        200 East Wall Street, Suite 222
22      Midland, Texas  79701
        (432) 685-0361
23      ann_record@txwd.uscourts.gov

24       Proceedings reported by machine shorthand reporter.
        Transcript produced by computer-aided transcription.

25

1              **I N D E X**

2

3                                                         **PAGE**

4

5    Proceedings                                            3

6    Ruling by The Court                                   19

7

8
     **WITNESSES FOR THE DEFENDANT:**                     **PAGE**
9
     COSANDRA McDOUGALL
10       Direct Examination By Mr. Rogers                   5
         Cross-Examination By Mr. Harwood                  10
11

12
     **DEFENSE EXHIBITS:**                                **RCVD**
13
     DX 1     Lab Report                                   11
14   DX 2     Earnings statement                            9
     DX 3     Copies of logs                                9
15   DX 4     Judgment                                      5
     DX 5     Judgment                                      5
16   DX 6     Judgment                                      5
     DX 7     Judgment                                      5
17   DX 8     Judgment                                      5
     DX 9     Judgment                                      5
18   DX 10    Judgment                                      5

19

20

21

22

23

24

25

1          **P R O C E E D I N G S**

2          (At 10:34 a.m., proceedings commenced)

3          (Defendant present)

4          THE COURT:  The Court calls U.S. vs. Jesse Hardee in

5  MO:19-CR-265 today for sentencing.

6          MR. HARWOOD:  Good morning, Your Honor.  Glenn

7  Harwood for the Government.

8          MR. ROGERS:  Judge, David Rogers.  I'm here with

9  Mr. Hardee.  We're present and ready.

10          THE COURT:  Very good.  Thank you.

11          And you're Jesse Hardee, correct?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Good morning, Mr. Hardee.

14          Mr. Rogers, do you believe Mr. Hardee is competent?

15          MR. ROGERS:  I do.

16          THE COURT:  And have you reviewed with him the

17  Presentence Investigation Report?

18          MR. ROGERS:  I have.

19          THE COURT:  Mr. Hardee, you've reviewed this report,

20  correct?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Mr. Rogers, are there objections or

23  corrections to the report?

24          MR. ROGERS:  Yes, Your Honor.

25          THE COURT:  All right.

1      Mr. Hardee, have a seat.

2      And, Mr. Rogers, you may proceed.

3      MR. ROGERS:  Your Honor, we had made several

4  objections.  The Probation Department corrected two of them.

5  We had objected to obstruction and acceptance of

6  responsibility.  The obstruction was taken out, and he was

7  granted acceptance of responsibility points.  So I withdraw

8  those -- obviously, I withdraw those objections.

9      THE COURT:  Yes, sir.

10     MR. ROGERS:  Our two remaining objections -- Your

11 Honor, three remaining objections are, one, the amount of

12 narcotics is overstated; second, should he get a role

13 reduction; and, third, and this -- I'm going to put the

14 judgments in.  I don't believe it to be a valid objection.  But

15 in case an appellate lawyer believes differently, I have the

16 judgments.  And our objection for the criminal history would be

17 is overstated and the evidence does not support it.  I'm going

18 to put in the judgments.  My calculations were 20.  But if

19 someone else thinks different, I want to preserve that

20 objection, Judge, but in candor to the Court.

21     THE COURT:  So as to that objection, I'll overrule

22 that objection just for the record.

23     MR. ROGERS:  And I'll go ahead and give you those.

24     THE COURT:  In case that helps in any way.

25     MR. ROGERS:  It's Exhibits 4 through 10 and those are

1  just the corresponding judgments.

2         THE COURT:  Any objection, Mr. Harwood?

3         MR. HARWOOD:  None, Your Honor.

4         THE COURT:  Those are admitted without objection.

5         MR. ROGERS:  And the first objection, Your Honor, is

6  basically the amount of narcotics is overstated.  I've got his

7  mother here to testify.  A majority of the narcotic weight is

8  based on money.  So I'm going to have her here to testify.

9         THE COURT:  Ma'am, if you would come on up to the --

10 come on up here.  And right before you get to the witness

11 stand, I'll have you stop and have you sworn in.

12         (Witness sworn by the clerk at 10:36 a.m.)

13         THE COURT:  Mr. Rogers, go right ahead.

14         MR. ROGERS:  Thank you.  Also, in candor to the

15 Court, Your Honor, I'm submitting *United States vs. Haines*,

16 H-A-I-N-E-S, 803 F.3d 713.  It's a 2015 Fifth Circuit case.

17 May I approach?

18         THE COURT:  Yes, sir, you may.

19         MR. ROGERS:  But it was not clear error to consider

20 money.  We're going to make the objection regardless.

21                  **COSANDRA McDOUGALL,**

22          **DEFENDANT'S WITNESS SWORN AT 10:36 A.M.**

23                  **DIRECT EXAMINATION**

24 BY MR. ROGERS:

25 Q.   Tell us your name, please.

1  A.     Cosandra McDougall.

2  Q.     And, Ms. McDougall, are you employed?

3  A.     I'm retired.

4  Q.     And how are you related to Mr. Hardee?

5  A.     I'm his mother.

6  Q.     Okay.  Where did you retire from?

7  A.     From M & P Construction in Crane.

8  Q.     And when did you retire?

9  A.     In February of 2014.

10 Q.     And were you married?

11 A.     Yes.

12 Q.     How long were you married for?

13 A.     33 years.

14 Q.     What did your husband do?

15 A.     He was a supervisor, and then he was a finish blade

16 mechanic.

17 Q.     And how much did he make?

18 A.     Probably made 60- to $70,000 a year.

19 Q.     And I think you told us already, but I'll ask you again.

20 Did he pass away?  When did he pass away?

21 A.     Yes.  We lost him December 10, 2018.

22 Q.     Was it sudden or expected?

23 A.     Yes.  No, we were not expecting it at all.

24 Q.     What happened?

25 A.     He had been sick over the weekend.  I had been treating

1  him for what we thought was the flu.  Found out he had

2  pneumonia.  I'm not for sure what all happened at the hospital

3  because they took him to the back, and next thing I knew he was

4  on life support.

5  Q.   Did he use banks or how did he store his -- keep his

6  money?

7  A.   He did not like the banks, no.

8  Q.   After he passed away, did you find cash around the house?

9  A.   Not in the house but out in his shop.

10 Q.   Okay.

11            MR. ROGERS:  May I approach, Your Honor?

12            THE COURT:  Of course.  Yes, sir.

13 Q.   (BY MR. ROGERS)  Let me show you what I've marked

14 Defendant's Exhibits 2 and 3.  Is 2 a copy of Mr. Hardee's wage

15 stubs?

16 A.   Yes, sir.

17 Q.   What is the last date?

18 A.   November 20th of '19.

19 Q.   Did you pick these up at his place of employment?

20 A.   Yes, uh-huh.

21 Q.   Did you make any alterations to them?

22 A.   No.

23            THE COURT:  And by Mr. Hardee, we're talking about

24 the defendant?

25            MR. ROGERS:  Yes, sir.

1      THE COURT:  Okay.  I just want to make sure.

2  Q.   (BY MR. ROGERS)  Where was he employed?

3  A.   He was working for Aarons Services.  It's an oil field

4  company.

5  Q.   Okay.  And tell us what Defendant's Exhibit No. 3 is.

6  A.   This is a notebook that I've had after my husband passed.

7  He had been collecting tools for longer than we had been

8  married.  And I started selling part of his things out of

9  there.  We had a shop out at the house that had three rooms of

10 tools, and I'm still selling tools.

11 Q.   When did you start selling the tools?

12 A.   January of 2019.

13 Q.   And you understand that in this case we're talking about

14 two separate amounts of money.  One in the amount of $40,098.

15 A.   Yes, sir.

16 Q.   You don't have any knowledge of where that money came

17 from, do you?

18 A.   No, sir.

19 Q.   The other amount that was on -- seized with you was

20 $36,573; is that correct?

21 A.   No, sir.  It was $36,672.

22 Q.   Okay.  And was that all your money?

23 A.   Yes, it was.

24 Q.   Was any of it provided to you from Mr. Hardee for drug

25 moneys?

1    A.    No, sir.

2    Q.    So the money that's attributable to him that was seized

3    with you, was that your money?

4    A.    The money that they got from me?

5    Q.    Yes.

6    A.    Yes, it was all my money.  Well, my husband's money and

7    then my money.

8    Q.    Was any of that from the sale of narcotics?

9    A.    No, sir.

10         MR. ROGERS:  Your Honor, we move for the introduction

11   of Defendant's Exhibits 2 and 3.

12         THE COURT:  Mr. Harwood.

13         MR. HARWOOD:  No objection.

14         THE COURT:  Those are admitted.  2 and 3 are admitted

15   without objection.

16   Q.    (BY MR. ROGERS)  And you are here today testifying freely

17   and voluntarily?

18   A.    Yes, I am.

19   Q.    And you have some pending charges in Crane County?

20   A.    Yes, sir.

21   Q.    And you have a lawyer representing you on that?

22   A.    Yes, I do.

23   Q.    And he understood you were going to testify today?

24   A.    Yes, sir.

25   Q.    And no one's coerced you into testifying.

1  A.   Absolutely not, no.

2  Q.   And no one's discussed that case with you or made any

3  promises or had anything to do with that, have they?

4  A.   No, sir.

5  Q.   Other than you have these outstanding charges?

6  A.   Yes.

7       MR. ROGERS:  Nothing further, Your Honor.

8       THE COURT:  Mr. Harwood, your witness.

9                    **CROSS-EXAMINATION**

10 BY MR. HARWOOD:

11 Q.   Ms. McDougall, do you have any felony convictions?

12 A.   No, sir.

13 Q.   When you were stopped on the 26th of November, how much

14 methamphetamine was in your vehicle?

15 A.   They said 73 grams, but I obtained a lawyer, and I am

16 willing -- I'm going to fight these allegations.

17 Q.   Who said 73 grams?

18 A.   That's what was in my paperwork they sent me.

19 Q.   Was there methamphetamine in your vehicle?

20 A.   Very little.

21 Q.   How much?

22 A.   I have no idea.

23 Q.   Whose was it?

24 A.   I guess it was mine.  It was in my purse.

25 Q.   Well, okay.  Did you purchase that methamphetamine?

1  A.    No, I did not.

2  Q.    It just magically ended up in your purse.

3  A.    No.  It was given to me.

4  Q.    Who gave it to you?

5  A.    A friend of mine.

6  Q.    What's your friend's name?

7  A.    I'm not at liberty to say.

8  Q.    Well, you're certainly under oath and you're --

9  A.    I certainly am, and I am going to plead the Fifth.

10          MR. HARWOOD:  Nothing further, Your Honor.

11          THE COURT:  Redirect?

12          MR. ROGERS:  No, Your Honor.

13          THE COURT:  You may step down.  Thank you.

14          MR. ROGERS:  And finally, Judge, I would move for

15  Defendant's Exhibit 1.  It's a copy of the lab results.

16          THE COURT:  Oh, okay.

17          Mr. Harwood?

18          MR. HARWOOD:  No objection, Your Honor.

19          THE COURT:  The lab results for?

20          MR. ROGERS:  That were referenced in the Presentence

21  Report for the drug weights.

22          THE COURT:  Oh, okay.  That's admitted without

23  objection.  Thank you.

24          MR. ROGERS:  And our argument would be, Judge, that

25  the amounts seized are not -- don't correlate to the amounts of

 1  money in Mr. Hardee's possession and, therefore, the cash

 2  amount is vastly overstated.

 3          In regards to the statements contained, my problem

 4  with the statements, Judge, is Mr. Hardee gave a statement,

 5  number one, that's referenced in the PSR.  He then gives a

 6  second statement and basically it is the officer saying:  We

 7  have your mother.  We found meth in her purse.  Will you talk

 8  to us?  Mr. Hardee agrees and says, Yes, and the tape ends.

 9  So -- and I always date myself when I say "tape."  I know it is

10  not a tape anymore.  But there is nothing corresponding, you

11  know, to what was actually said.

12          So our basic objection, Judge, is with the documents

13  we provided for you, the methamphetamine and the narcotics

14  amounts should be, you know, cut in half, if not more, because

15  we've shown that this -- the money was his mother's.

16          In regards to the rule, Your Honor, I made that

17  objection.  It was basically a two-person conspiracy.  There is

18  no other evidence of him dealing with anybody else.  There was

19  some mention of a Mr. Flores, but he was not put in that

20  conspiracy.  It was a two-person conspiracy, like I said,

21  between him and Heather Griffith, who you're about to sentence.

22  There was no controlled buys, no evidence of buys.  So I've

23  asked for that role reduction, and I'll leave that up to the

24  Court.

25          THE COURT:  All right.  Let me just say then as to

1   the second objection, the role reduction, the Court relies upon

2   the probation officer's respond and the facts in the case.  I

3   don't see where 3B1.2 has been -- met that definition of him

4   having a mitigating role.  So I don't see that -- so I'll

5   overrule that objection.

6          I want to talk about the relevant conduct objection,

7   however.

8          Mr. Harwood, what would you respond?

9          MR. HARWOOD:  Your Honor, as to the money, what the

10  Court's been provided is some ledgers and some receipts, and so

11  I would just like to comment on the evidence.

12         THE COURT:  Yes, sir.

13         MR. HARWOOD:  Additionally, you had some testimony

14  from the defendant's mother.  The defendant's mother was

15  traveling with the defendant's -- codefendant/fiancée/

16  girlfriend, whatever relationship they had -- in that vehicle

17  together to the defendant's house with -- with them

18  30-some-odd-thousand dollars in cash.  At the defendant's home

19  he had 30-some-odd-thousand or $40,000 in cash.

20         So the disputes amount is this $30,000 in cash.  The

21  testimony was that they said 73 grams of methamphetamine were

22  found there.  She admitted that it was in her purse.  That it

23  was some amount.  She won't say where she got it.  Her

24  testimony about the drugs is not credible.  Because her

25  testimony about the drugs is not credible, you can find that

 1  she's not credible.  In fact, she probably wisely invoked her

 2  Fifth Amendment right to not answer any other questions.

 3      But what the Court can consider is the fact that if

 4  we're talking about garage selling her deceased husband's

 5  tools, people don't write receipts for that kind of thing,

 6  generally.  The notes and the receipts are all in the same

 7  handwriting all at the same time.  It looks more like it was

 8  something that was prepared to make an argument in court.

 9      Based on her activity, who she was with, where she

10  was going, the attendant circumstances around the case, it's

11  more likely than not that that 30-some-odd-thousand dollars is

12  attributable to the defendant just like the

13  40-some-odd-thousand dollars at the defendant's residence

14  before his mother and girlfriend/codefendant get to the

15  residence.  The government believes that there is a

16  preponderance of evidence where the Court can make a good faith

17  calculation and attribute that money to drug activity and,

18  therefore, convert it as the probation office has done.

19      THE COURT:  Mr. Rogers, anything else?

20      MR. ROGERS:  No, Your Honor.

21      THE COURT:  The Court overrules the objection in

22  reliance on that argument as well as the response from the

23  probation officer.  The Court finds Ms. McDougall's testimony

24  to be wholly uncredible and unbelievable.  I do find as well

25  the exhibits that show -- I guess the attempt is to show some

1 plausible explanation of where that money came from.  Taken at

2 face value, I believe, you could bend your mind to believe

3 that.  However, they do appear to me -- the same as Mr. Harwood

4 mentioned, they appear to be almost carbon copies of each

5 other, though the numbers and names have been change.  I think

6 that's clear from a viewing of the -- of some of those

7 receipts, some of the hand notes or the -- I guess from the

8 notebook look a little different than that.

9        But I will state that in looking at Paragraph 12, I

10 believe, Mr. Hardee ordered 3 to 4 ounces of methamphetamine, 1

11 to 2 ounces of heroin, and 1 ounce of marijuana.  He reported

12 that he, quote/unquote, re-upped once a week since

13 January 2019.  The total amount of moneys attributed to him is

14 $77,671.62.  Given that purchasing history, if you divide those

15 moneys up, it's really very plausible and believable that that

16 money was all derived from those narcotics trafficking

17 activities.

18        If you figure out -- and the probation officer went

19 deeper than I did.  She says 3/5 of the moneys were calculated

20 for methamphetamine, 1/5 of the money is calculated for heroin,

21 and 1/5 of the money is calculated for marijuana.  And so we

22 reach this total of 132,661.27 kilograms.  I keep double

23 checking that because that seems like a lot, but it would add

24 up in doing that.

25        So the Court overrules the objection as I already

1  overruled the mitigating role or minor participant objection as

2  well.

3         Mr. Hardee is certainly anything but a minor

4  participant, and he certainly had anything but a mitigating

5  role in this offense.

6         Are there other objections?

7         MR. ROGERS:  We ask for a sentence reduction.  I'll

8  address that whenever you want me to.

9         THE COURT:  Yes, sir.  Okay.  And we'll get to that.

10        Mr. Harwood, are there objections or corrections to

11  the report from the government?

12        MR. HARWOOD:  None, Your Honor.

13        THE COURT:  The Court has reviewed the Presentence

14  Investigation Report prepared by U.S. Probation Officer Angela

15  Lopez.

16        I find the report to be accurate.  I adopt it and the

17  application of the United States Sentencing Guidelines

18  contained in the report.

19        I find the total base offense level is 35.

20        Criminal history category is VI.

21        The guideline range is 292 to 365 months.

22        Five years' supervised release.

23        Mr. Hardee is ineligible under the guidelines for

24  probation.

25        $40,000 to $10 million fine is available.

1    $100 mandatory special assessment.

2    And there is, I do note, Mr. Rogers, that you have

3  made a motion.  Go right ahead.

4    MR. ROGERS:  And I didn't object to the fine, Your

5  Honor.  I would just point out he is indigent and represented

6  by court-appointed counsel in this case.

7    THE COURT:  I agree with you.

8    Mr. Hardee, go ahead and stand.

9    Yes, sir.

10    MR. ROGERS:  We have asked for a downward departure

11  in this case.  One, I don't think there is anything in the code

12  that says the Court cannot consider this.  It's his birthday.

13    Secondly, in reality, Your Honor, not to make light

14  of the matter, this is -- we have to talk about what takes this

15  case out of the heartland.  The only thing that really might

16  take this case out of the heartland that you can hang your hat

17  on is the fact that there are no controlled buys, there are no

18  confidential informants, there are no snitches.  I think that's

19  the same as confidential informants.

20    THE COURT:  Yes, sir.

21    MR. ROGERS:  But you don't have anything attributing

22  Mr. Hardee to drug trafficking other than, you know, statements

23  and money; but you don't have any, as they say, dope on the

24  table.

25    So that's what would take this out of the heartland,

1   and we would ask for a sentencing reduction because he's facing

2   an incredible amount of time.  And if you look at his prior

3   sentences, it looks like he got a bunch of those at the same

4   time.  They were three-point hits, and then he got some in

5   Odessa.  I think in 2017.  And then he was on parole out of

6   Judge Whalen's court, and that got him an extra two points.

7           THE COURT:  Okay.

8           So, Mr. Hardee, what would you like to say?  Go right

9   ahead.

10          THE DEFENDANT:  I would like to start off by saying I

11  take full responsibility for my actions.  I want to apologize

12  to whoever I may have affected with my negative manner dealing

13  with drugs, but -- I made multiple mistakes throughout my life

14  linked back to my addiction.  But if I [sic] can find in your

15  heart to see past my drug use and give me an opportunity to

16  work during my time of incarceration so I can better myself

17  and -- for myself -- for me and for my loved ones.  And in

18  close, I would like to thank you for listening to what I have

19  to say, Your Honor.  And if you could please take everything

20  into consideration, I'd greatly appreciate it.

21          THE COURT:  Thank you, Mr. Hardee.  I was looking at

22  your picture in the report.  You look way better.  You look way

23  better now.  I think you look healthy now.

24          THE DEFENDANT:  Appreciate it.

25          THE COURT:  I mean, you didn't look real healthy back

 1 then, but you look healthy now.  So I'm glad -- hopefully this

 2 is going to help.  I pray it does.  But you had been unemployed

 3 for a couple of months prior to that arrest anyway.  And so, I

 4 mean, obviously you were selling drugs, but I know you were

 5 using as well.  Correct?

 6          THE DEFENDANT:  Mostly using.

 7          THE COURT:  Mostly using.  Okay.

 8          Mr. Harwood.

 9          MR. HARWOOD:  Your Honor, the government believes the

10 guidelines are appropriate.  $70,000 means different things to

11 different people.  To some people, it means a nice new truck;

12 and we see that a lot around Midland.  But in this case, the

13 government would urge the Court to consider that $70,000

14 represents $20 at a time, $100 at a time to people hooked on

15 the poison that the defendant was feeding them a paper at a

16 time or a gram at a time or an eight ball at a time.  That's a

17 lot of money.  That's a lot of poison that the defendant was

18 dealing, including to people that he claimed to love, probably

19 his mother and at least his codefendant girlfriend.  That's a

20 lot of money.  It's a lot of drugs.  And the government

21 believes that the guidelines accurately reflect his conduct.

22          THE COURT:  Thank you.

23          I also received a letter from your mom too.  I wanted

24 you to know that.  And I'm sorry about your dad dying.  She

25 mentioned that as well.

1          THE DEFENDANT:  Thank you.

2          THE COURT:  The Court does not depart and will deny

3    the defense motion for downward departure, finding that the

4    case does not lie outside the heartland of cases of this

5    nature.

6          The Court does not depart from the recommended

7    sentence.

8          Pursuant to the Sentencing Reform Act of 1984, which

9    I have considered in an advisory capacity, and the sentencing

10   factors set forth in 18 U.S.C., Section 3553(a), which I have

11   considered in arriving at a reasonable sentence, I find the

12   guideline range in this case to be fair and reasonable.

13         The defendant is placed in the custody of the United

14   States Bureau of Prisons to serve a term of imprisonment of

15   365 months.

16         Upon release from the United States Bureau of

17   Prisons, you are placed on supervised release to serve a term

18   of five years.

19         The standard and mandatory conditions of supervision

20   are imposed.

21         And I'll include also the search condition of

22   supervision within the Western District of Texas.

23         There is no fine imposed.  I do agree with Mr. Rogers

24   that you're unable to pay a fine because you're unable to work.

25   You're unable to sell drugs like you've been doing for some

1 time.

2          And there is a $100 mandatory special assessment you

3 are required to pay to the Crime Victims Fund.

4          Your Presentence Report will be sealed.

5          You have the right to appeal your conviction and your

6 sentence, assuming you have not given up that right.  You must

7 file Notice of Appeal in writing within 14 days of the entry of

8 this judgment.  If you are unable to afford an attorney or the

9 transcript of the record of the case on appeal, those will be

10 provided at no expense to you, Mr. Hardee.

11          Mr. Rogers.

12          MR. ROGERS:  Judge, we would further object to the

13 sentence in this case is procedurally and substantially

14 unreasonable for the reasons I've set forth.

15          THE COURT:  Yes, sir.  Thank you.

16          Mr. Harwood.

17          MR. HARWOOD:  Nothing further, Your Honor.

18          THE COURT:  Is there any request for a placement, do

19 you know?

20          MR. ROGERS:  Where do you want to go?

21          THE DEFENDANT:  Seagoville.

22          THE COURT:  Seagoville.  I'll make that

23 recommendation.  That's all it is, but hopefully they will try

24 to get you there.

25          I remand you to the custody of the United States

1  Marshals to serve your sentence.  I wish you the best.  I wish

2  the best to your mom and family as well.  Thank you.

3          MR. ROGERS:  And, Judge, I'll have the Motion to

4  Withdraw filed and the Notice to Appeal.

5          THE COURT:  Thank you, Mr. Rogers.

6          (Proceedings concluded at 10:57 a.m.)

7                  * * * * * *

8                  **C E R T I F I C A T E**

9

10         I, ANN M. RECORD, United States Court Reporter for

11  the United States District Court in and for the Western

12  District of Texas, hereby certify that the above and

13  foregoing contains a true and correct transcript of the

14  proceedings in the above-entitled and numbered cause.

15         WITNESS MY HAND on this 7th day of August, 2020.

16

17

18         _____*/s/Ann M. Record*_____
           Ann M. Record, RMR, CRR, CMRS, CRI
19         United States Court Reporter
           200 East Wall Street, Suite 222
20         Midland, Texas  79701
           Telephone:  (432) 685-0361
21         e-mail:  ann_record@txwd.uscourts.gov

22

23

24

25